MEDWORTH, Respondent, v. SAINT PAUL FIRE & MARINE INSURANCE COMPANY, Appellant.

(221 N. W. 599.)

(File No. 6103. Opinion filed October 17, 1928.)

*Crofoot & Ryan,* of Aberdeen, for Appellant.
*Lauritz Miller,* of Mitchell, for Respondent.

BURCH, P. J. Plaintiff sues to recover for loss under a tornado insurance policy issued by defendant. The defense is that the policy was canceled prior to loss thereunder. Whether or not the policy was canceled as claimed was the sole question submitted to the jury. The jury found in favor of plaintiff and judgment was rendered accordingly. Defendant appeals from the judgment and an order denying a new trial.

A number of assignments of error pertain to the receipt and rejection of evidence. One assignment challenges the sufficiency of the evidence to support the verdict and this will be first considered. We here state the facts deemed material on the issue of cancellation:

The policy was issued in August, 1922, and plaintiff gave her note for $49, the premium, on this and a companion policy covering loss by fire and lightning. Concerning cancellation of the policy, the note provided:

"That in the event that the company or the assured elects to cancel the policy, the assured will pay the amount of earned premium thereunder and accept the balance of the note as legal tender in payment of the unearned premium, and surrender to the company said policy canceled; and in case the company shall give notice to the assured of cancellation, according to the conditions of the policy, and shall indorse the unearned premium on the note, and tender a receipt for the same, it shall constitute a cancellation of the policy and make it null and void."

The policy provided:

"This policy may be canceled at any time by the company by giving to the insured a five-day written notice of cancellation."

The note became due November 1, 1922. On November 4, 1922, plaintiff paid on the note $15, and the note was extended to December 1, 1922, and, later, to October 1, 1923. Plaintiff made no further payment thereon, and shortly after the expiration of the time to which it had last been extended appellant requested its local agency at Mitchell to take up the policies for which the note was given as premium, and Mr. French of the Mitchell agency went out to respondent's home for the purpose of taking up the two policies. He did not get the policies, but he did get lost policy receipts signed by respondent. What happened at this time is in dispute. French says respondent told him she did not have the policies; that they were in a bank at Mitchell. Respondent says she had the policies in the house; that when she was asked to sign the receipts she told French she did not like to sign them because the company held her note; that French replied: "Well; as long as the company holds your note and you hold the policy, they are good for any loss that might occur." French denies this. The lost policy receipts were dated October 4, 1923, and contained a statement that

respondent relinquished all rights under the policies and agreed to return the policies to the company when found. To prove cancellation of the policy by giving of notice according to its terms, appellant showed by its officers and records of its Aberdeen office that a notice (the contents of which are not in dispute) was prepared, inclosed in an envelope, and sent by registered mail to the address of respondent on the 31st of October, 1923, with request for return receipt; that the return receipt came back in due time showing delivery of the letter to Clara Shuster, as agent for the addressee. Clara Shuster testified she gave the letter to respondent and respondent admits receiving it. She admits there was an inclosure within the envelope, but on being shown a copy of the inclosure she says she does not remember of receiving anything like that. Being questioned as to the contents of the inclosure, she said it told her she was owing $5 on her note. The notice of cancellation showed the earned premium, the amount of the unearned premium indorsed on the note, and that there was a balance of $4.75 due thereon. After receipt of the registered letter respondent paid nothing, and nothing further was done until after loss, which occurred June 24, 1924, nearly eight months thereafter.

To recover, respondent must have her loss covered by a valid policy of insurance in force at the time of the loss. She produced in evidence a policy for which she had not paid the premium, and for which she had signed a lost policy receipt agreeing to return it and waiving any claim thereunder.

Assuming that the production of the policy which on its face covered the loss was sufficient to support a prima facie case in favor of respondent and that the burden was upon appellant to show its cancellation, we proceed to analyze the evidence produced on this issue by appellant and respondent's evidence to meet it. Appellant showed that a request for the return of the policy was made; that in lieu of its return a lost policy receipt was taken whereby respondent agreed to return it and waived all right thereunder; and that following this a notice of cancellation was sent by registered mail sufficient in all respects to cancel the policy, if received by respondent. Barring the chance of a mistake in inclosing the notice, the receipt of the notice of cancellation by respondent is conclusive if appellant's witnesses are believed. To meet this respondent does not deny receiving the notice, but says she

does not remember, although she admits receiving the registered envelope and says it contained an inclosure. She says the inclosure referred to the amount due on her note and notified her there was $5 due. The amount mentioned is within 25 cents of the amount named in the notice of cancellation produced by appellant, and many dollars less than the amount that would have been due without cancellation of the policy and indorsement of unearned premium.

Such evidence tends to corroborate rather than disprove the receipt of the notice. There is nothing unreasonable or contrary to the natural course of events or experience of men in appellant's evidence warranting the jury in disbelieving appellant's witnesses. On the contrary, to disbelieve them would be to believe that the agents of an insurance company, with no direct pecuniary advantage to themselves, would support an elaborate scheme to evade a small loss with perjured testimony of numerous witnesses. There is no sufficient evidence upon which the jury could find that the policy was in force at the time the loss occurred.

As this disposes of the case it is not necessary to consider other assignments of error. Respondent suggests that she might have rested her case on either waiver or estoppel because of the conduct of the company in sending out an adjuster and adjusting the claim, but there is no evidence of either a waiver or estoppel. If there was no policy in force there were no provisions thereof to be waived. Respondent could not have been misled in any way to her injury by the conduct of the company's agents, and therefore no estoppel could result. The learned trial judge should have instructed the jury to return a verdict for appellant.

The judgment and order appealed from are reversed, with direction to the trial court to dismiss the action on its merits.

POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.